## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT PADUCAH

**SHERRI EDWARDS**
    Plaintiff

**v.**                                           **No. 5:08CV-00125-J**

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant

### MAGISTRATE JUDGE'S REPORT
### and RECOMMENDATION

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Mark Pierce. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 10 and 13, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on November 21, 2007, by administrative law judge (ALJ) Thomas Bryan. In support of his decision denying Title II and Title XVI benefits, Judge Bryan entered the following numbered findings:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2005.

2. The claimant has not engaged in substantial gainful activity since March 1, 2000, the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3. The claimant has the following severe impairments: spina bifida, degenerative disc disease of the lumbar spine, cervical radiculitis, and myofascial pain syndrome (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work.  She can lift and carry 20 pounds occasionally and 10 pounds frequently.  She can stand and/or walk for six hours in an eight-hour day and sit for six hours in an eight-hour day with normal breaks.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on December 23, 1971 and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2000 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Administrative Record (AR), pp. 18-23).

## Governing Legal Standards

1.  The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision.  42 U.S.C. § 405(g), sentence four.  In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal

standards in reaching her decision.  *Richardson v. Perales*, 402 U.S. 389 (1971).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to  support  a  conclusion. *Kirk v. Secretary*,  667  F.2d  524 (6th Cir., 1981).  It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a  verdict."  *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988).  In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account  whatever  in  the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992).  However:

> The substantial-evidence standard allows considerable latitude to administration decision makers.  It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts.  An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence  that   was before the Commissioner on the date of the final decision.   When  the Appeals Council declines to review the ALJ's decision and render a new decision, the  ALJ's decision becomes the Commissioner's final decision.   *Cotton  v.  Secretary*, 2  F.3d  692 (6th Cir., 1993).

2.   To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act.  To qualify for supplemental security income (SSI) benefits, a claimant  must  file a Title XVI application, must have insufficient earnings and other

financial resources, and must be under a disability as defined by the Act.    The  determination of disability is essentially the same for Title II and Title XVI purposes.

    3.   Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe."  A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that  are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's  ability  to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985).  Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3.   In addition,  the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R.  §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a <u>prima facie</u> showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). The focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

### Fourth contention:  The medical-vocational guidelines

The plaintiff's fourth numbered contention is that "the ALJ's vocational analysis and application of the medical-vocational guidelines is defective and unsupported" (Docket Entry No. 10, p. 5). This case was denied at the fifth and final step of the sequential evaluation process based upon the rules in Appendix 2 of the regulations, the so-called medical-vocational guidelines, or grids. In his written decision, the ALJ cited Grid Rule 202.21, which contemplates a maximum exertional capacity for "light" work, in support of his denial decision (AR, p. 23). The ALJ applied the rule directly to conclude that the plaintiff is "not disabled." No vocational expert (VE) testified at the administrative hearing.

The grids direct an ultimate finding of "disabled" or "not disabled" based upon a limited number of medical-vocational factors, specifically, the claimant's age, education, past relevant work experience, and maximum exertional capacity. The functional requirements of each exertional level, e.g., "sedentary" and "light" work, are defined in the regulations at 20 C.F.R.  §§ 404.1567 and 416.967.  A non-exertional impairment is any mental, sensory, skin, postural, manipulative, or environmental impairment that results in a limitation other than those contemplated by the exertional

category to which the claimant is assigned.  If a claimant is found to suffer from a non-exertional impairment that "significantly limits his ability to do a full range of work at a designated [exertional] level," the Commissioner may not deny benefits based upon a direct application of the grids, but rather must rely upon vocational testimony or some other vocational source that takes into account the effect of the claimant's non-exertional limitations upon her ability to work. *Kimbrough v. Secretary*, 801 F.2d 794, 796 (6th Cir., 1986).  If a non-exertional impairment is present, the Commissioner may rely upon a particular grid rule only as a "framework for decisionmaking."   See Appendix 2, Section 200.00(e) and 20 C.F.R. §§ 404.1569a(d) and 416.969a(d).

As noted above, the ALJ found the plaintiff to be "not disabled" based upon a direct application of Grid Rule 202.21.  The magistrate judge observes that the corresponding rule for "sedentary" work, i.e., the rule contemplating the same age, education, and past relevant work experience as Grid Rule 202.21 ("light"), is Grid Rule 201.21 ("sedentary"), and it too directs an ultimate finding of "not disabled."  Judicial review contemplates a "harmless error" review. Grid Rule 201.21 contemplates greater limitations than Grid Rule 202.21 (i.e., the individual is limited to "sedentary" as opposed to "light" work) but Grid Rule 201.21 is nevertheless compatible with the ALJ's ultimate finding of lack of disability.  The undersigned concludes that, for purposes of a "harmless error" review, the relevant rule herein is Grid Rule 201.21, which contemplates a maximum exertional capacity for "sedentary" work.

"Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools, and may involve occasional walking and standing.  20 C.F.R. §§ 404.1567(a) and 416.967(a).  The ALJ acknowledged that the plaintiff

6

suffers from "severe," or vocationally significant, spina bifida, degenerative disc disease of the lumbar spine, cervical radiculitis, and myofascial pain syndrome.  ALJ's Finding No. 3.  In applying the grids directly to deny benefits, the ALJ implicitly found that these impairments do not "significantly limit[] his ability to do a full range of work at a [sedentary and/or light] level." See Kimbrough, supra.  Therefore, the dispositive question upon judicial review is whether this implicit finding is supported by substantial evidence in the administrative record, i.e., whether the plaintiff has pointed the court to probative evidence in the administrative record that her spina bifida, degenerative disc disease of the lumbar spine, cervical radiculitis, and myofascial pain syndrome significantly limit her ability to lift 10 pounds at a time and occasionally walk and stand.  For the reasons stated below, the magistrate judge concludes that the foregoing question should be answered in the negative, i.e., the plaintiff's impairments do not preclude "sedentary" and/or "light" work.

On May 13, 2006, the plaintiff was consultatively examined by Darren Fentress, M.D.  The narrative report of Dr. Fentress is at AR, pp. 300-307.  Based upon the findings of Dr. Fentress and the record as a whole, the state agency program physicians, Carlos Hernandez and Alex Guerrero, opined that, although she alleges spina bifida, back pain, neck pain, shoulder pain, and leg and knee problems, in fact, there is a lack of evidence of any medically determinable physical impairment (AR, pp. 274-275 and 322-323).  On December 19, 2005, the plaintiff was consultatively examined by Thomas Muehleman, Ph.D.  Dr. Muehleman's narrative report is at AR, pp. 252-256. In light of Dr. Muehleman's findings and the record as a whole, the state agency program psychologists, Jay Athy, Ph.D., and Dan Vandivier, Ph.D., found that the plaintiff's affective disorder is "not severe" (AR, pp. 257 and 308).  In light of the foregoing medical evidence, the magistrate judge concludes that the plaintiff has failed to establish the presence of any impairment or combination

of impairments that would significantly limit the performance of the full range of "sedentary" and/or "light" work.  Therefore, the ALJ did not commit a reversible error in directly applying the grid rules to deny benefits.

## Second and first contentions:  Due process

The plaintiff's second numbered contention is that "due process error was committed by the ALJ" (Docket Entry No. 10, p. 2).  The plaintiff's fact and law summary reflects that counsel is of the opinion that it is highly significant in this case that Judge Bryan died soon after he issued his written decision.  Counsel opines as follows (pp. 1-2):

> ALJ Thomas Bryan [was] an "old school" southern gentleman [who] unfortunately was suffering from physical and mental problems himself at the time of the hearing in this case [on September 10, 2007] ... at times, security guards were required to assist him to find his office due to his mental confusion. ... [Judge Bryan] specifically agreed to [give counsel time to submit evidence from the treating neurosurgeon, Rex Arendall] but never thereafter contacted counsel in that regard.  Rather, he simply fashioned and issued the unfavorable decision [on November 21, 2007] and he must have determined to do so within a few days after the hearing.  Counsel can only assume that ALJ Bryan's deteriorating physical and mental condition at that time resulted in his forgetting about what had been requested and agreed upon at the hearing.

Counsel cites page 370 of the administrative record in support of the existence of the alleged agreement between himself and Judge Bryan with respect to a post-hearing submission of evidence from Dr. Arendall.  The magistrate judge concludes that page 370 fails to establish the existence of any such agreement.  However, the undersigned acknowledges that the transcript reflects several instances of ellipsis (i.e., "- - ").  As a mark of punctuation, ellipsis is commonly understood as an indication that words or phrases have been omitted due to pause in speech, unfinished or incomplete thought, trailing off into silence, etc.   Therefore, it is possible that there was, in fact, the type of agreement that counsel alleges, either explicitly or implicitly.   Accordingly, for the sake of

8

argument, we shall assume that Judge Bryan failed to honor his commitment to allow counsel to submit evidence from Dr. Arendall prior to deciding the plaintiff's case. The question then is whether the presumed failure rose to the level of a due process violation.

The magistrate judge concludes that the question should be answered in the negative because the plaintiff has appended to her fact and law summary a copy of the evidence that counsel eventually obtained from Dr. Arendall (Docket Entry No. 10). We have examined Dr. Arendall's evidence for the limited purpose of determining whether a due process violation has occurred and not to be considered in addressing the merits of the judicial review herein. The examination of the evidence reveals no basis for concluding that the plaintiff suffers from any impairment or combination of impairments that would be expected to significantly limit her ability to do a full range of work at the "sedentary" and/or "light" exertional levels. Therefore, even if Judge Bryan had delayed deciding the plaintiff's claim until after he had considered the evidence from Dr. Arendall, there is no basis for concluding that this would have changed or precluded Judge's Bryan's reliance upon the grids or the ultimate outcome in this case. Therefore, at worst, Judge Bryan's failure to honor any agreement that may have been struck between himself and counsel at the hearing was harmless error that did not implicate the fundamental fairness of the decision. The plaintiff has failed to establish a due process violation.

The plaintiff's first numbered contention is as follows (Docket Entry No. 10, p. 1):

We are experiencing recurring administrative problems at the Appeals Council. Despite numerous efforts to correspond and confirm our requests and submissions to the Appeals Council, they apparently never saw or considered the additional evidence or memorandum submitted. Thus Mrs. Edwards was denied representation and procedural due process as required by 20 CFR 404.976 and constitutional due process considerations.

The contention is unpersuasive because judicial review is limited to a consideration of final

9

decisions of the Commissioner to determine if they are supported by substantial evidence and are in accord with applicable legal standards. 42 U.S.C. § 405(g), sentence four. When the Appeals Council declines to review the ALJ's decision and render a new decision, as occurred in this case, the ALJ's decision becomes the Commissioner's final decision. See *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993). The plaintiff is not legally entitled to have the Appeals Council consider his arguments, or at least, the matter is not cognizable upon judicial review. There is no fundamental unfairness, or due process error, because the plaintiff may now present to this court the same contentions he attempted to present in his memorandum to the Appeals Council.

To the extent the plaintiff attempts to rely upon new evidence that was not before the ALJ and that he was unable to get the Appeals Council to consider (i.e., the evidence from Dr. Arendall), his remedy herein is pursuant to sentence six of section 405(g). Sentence 6 requires, among other things, that the plaintiff prove that the new evidence is "material." The plaintiff has not moved for such a "sentence six" remand in which it would be the plaintiff's burden to demonstrate that the evidence is new and material. Nevertheless, we have concluded, in connection with the plaintiff's prior contention concerning Judge Bryan, that the evidence from Dr. Arendall would not have changed or precluded Judge's Bryan's reliance upon the grids or the ultimate outcome in this case. Therefore, the plaintiff cannot show that the evidence is "material." The plaintiff has failed to establish a due process violation.

### Other contentions

The plaintiff's third contention is that, in light of the significant clinical findings of Dr. Muehleman, including a current global assessment of functioning (GAF) of 55, the ALJ erred in

10

finding that she has a "non-severe" mental impairment (AR, p. 255) (Docket Entry No. 10, pp. 3-5). The argument is unpersuasive because, as we have already concluded, in connection with the plaintiff's fourth contention, that in light of Dr. Muehleman's findings and the record as a whole, the state agency program psychologists, Jay Athy, Ph.D., and Dan Vandivier, Ph.D., found that the plaintiff's affective disorder is "not severe" (AR, pp. 257 and 308). State agency program psychologists are deemed to be "highly qualified ... psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(f)(2)(i) and 416.927(f)(2)(i). Furthermore, the Sixth Circuit has held that GAF scores are deemed to be subjective and have little bearing on the individual's ability to function in an occupational context. ALJ's need not put "stock" in them. See *DeBoard v. Commissioner*, 2006 WL 3690637 and *Kornecky v. Commissioner*, 2006 WL 305648. Judge Bryan had a substantial basis for finding that the plaintiff's mental impairment was non-severe.

The plaintiff's fifth and final contention is that the ALJ's credibility analysis was flawed and unsupported (Docket Entry No. 10, pp. 6-7). The Commissioner's credibility determination is an open-ended multi-factors approach. See 20 C.F.R. §§ 404.1529 and 416.929 ("How we evaluate symptoms, including pain") and Social Security Ruling (SSR) 96-7p. Absent a compelling reason, a reviewing court should not disturb an ALJ's credibility findings. *Smith v. Secretary*, 307 F.3d 377, 379 (6th Cir., 2001). The ALJ and not a reviewing court is to make credibility findings regarding a claimant's subjective complaints. *Murphy v. Secretary*, 801 F.2d 182, 184 (6th Cir., 1986). The magistrate judge concludes that the plaintiff has failed to show that Judge Bryan acted outside his province or abused his discretion in reaching his credibility findings.

11

## RECOMMENDATION

The magistrate judge RECOMMENDS that the Commissioner's final decision be AFFIRMED and that the plaintiff's complaint be DISMISSED.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The court shall not conduct a de novo review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).